### LEO W. ROSENFIELD *vs.* A. NEWMAN.

Argued Nov. 1, 1894. Reversed Nov. 16, 1894.

No. 8980.

**Landlord and tenant—Statement of facts.**

Defendant was the owner of a two-story building, the lower story of which was rented to the plaintiff, and the rooms in the second story to several parcel tenants. On the second floor was a water-closet and sink designed for the accommodation of the tenants on that floor, who had the right to use them; but the evidence tended to prove that, subject to such use, they remained in the general control and possession of the defendant. The sink was furnished with a pipe and faucet for the purpose of supplying water. The faucet was a "compression bibb" or screw faucet of the kind ordinarily and almost invariably used in connection with such sinks. In the bottom of the sink was a strainer, connected with a pipe to carry off the waste water, and which was ample to carry off all the water discharged from the faucet turned on to its fullest capacity. Plaintiff's lease contained no covenants either to repair or as to the condition of the premises. One night some unknown person cast a rag into the sink, which closed up the outlet, and left the faucet open and the water running, in consequence of which it overflowed the sink, ran down into the room below, and damaged plaintiff's goods.

**On the facts stated the landlord not liable to tenant for injury by water to his goods.**

*Held,* that the defendant was not liable, and that it was error to instruct the jury, in effect, that if he retained control and possession of the closet and sink he was liable for the damage.

Facts did not show negligence or want of reasonable care on the part of the landlord.

That defendant owed plaintiff no contract duty with reference to the closet and sink, and was not an insurer of their safe condition or against the negligence of his other tenants, and he would only be liable for his own negligence or want of ordinary care to prevent the closet or sink from becoming a nuisance or doing injury to the property of others. The appliances being ample, if properly used, to prevent overflow, reasonable care did not require that defendant should, by the adoption of some other appliances reduce the possibility of overflow from negligence to an absolute minimum.

Appeal by defendant, A. Newman, from an order of the District Court of Otter Tail County, *L. L. Baxter*, J., made April 10, 1894, denying his motion for a new trial after verdict for plaintiff for $180.

*Mason & Hilton*, for appellant.

After plaintiff rested his case defendant moved the court to dismiss the action on the ground that plaintiff had not proved facts sufficient to constitute a cause of action. The court refused and defendant excepted. This written lease contains no stipulation that the sink on the second floor was in good condition or that it would be kept so; no warranty that the premises, or any part of them, were or would be kept suitable or safe for plaintiff's business. It contained no promise that defendant would make repairs or be responsible for the acts of other tenants. These tenants of the upper floor were in the building when plaintiff rented the lower floor and he had notice of their right to use the sink and closet. The facts bring the case within the rule stated in *Krueger* v. *Ferrant*, 29 Minn. 385; *Wilkinson* v. *Clauson*, 29 Minn. 91; *Mendell* v. *Fink*, 8 Ill. 378; *Kenny* v. *Barns*, 67 Mich. 336.

Before plaintiff can recover he must show negligence on the part of defendant. *Orth* v. *St. Paul, M. & M. Ry. Co.*, 47 Minn. 384; *McCarthy* v. *York County Savings Bank*, 74 Me. 315.

*Houpt & Baxter*, for respondent.

The responsibility for the proper and safe management of the closet on the upper floor must rest upon some person. It was not the duty of the upper tenants to guard the plaintiff against injury from the misuse of the sink. Since the duty or responsibility must

originally have belonged to the defendant as the owner of the building, he cannot escape the consequences until he shows a transfer of that duty to some other person, and having failed to do this the conclusion is inevitable that he only is the responsible person.

When an appurtenance attached to and made for the accommodation of several different tenements, leased to divers tenants, remains in the possession of the landlord, though it is used by the lessees, he is bound to keep it in a reasonably safe condition for use.   3 Southerland, Dam. (2nd Ed.) § 872.   *Donohue* v. *Kendall*, 50 N. Y. Super. 386.

The landlord may likewise be liable on the ground of negligence for injuries resulting from carelessness or mismanagement of himself or his servants when the circumstances of the case leave the landlord in control.   *Jones* v. *Freidenburg*, 66 Ga. 505; *Learoyd* v. *Godfrey*, 138 Mass. 315; *Glickauf* v. *Maurer*, 75 Ill. 289; *Peil* v. *Reinhart*, 127 N. Y. 381.

MITCHELL, J.   The defendant was the owner of a two-story building, the first story being designed for a store and the second story being divided into several rooms, suited for offices and small tenements.   On the second floor was a water-closet and a sink, designed for the use and accommodation of the tenants on that floor.   The sink was furnished with a pipe and faucet for the purpose of supplying water.   This faucet was of the kind generally used in such places, being a "compressed bibb" or screw, and not a self-closing faucet.   In the bottom of the sink was a strainer, connected with a waste pipe to carry the water from the sink to the sewer.   This outlet, if not clogged up, was more than ample to carry off all the water that would run from the faucet turned on to its fullest extent.   The rooms in the second floor were rented to several parcel tenants, each of whom was furnished by defendant with a key to the closet, which they had the right to use as appurtenant to their several tenements, but which did not constitute any part of the premises leased to them, but remained, subject to this right of use by the tenants, under the general control of the defendant, as the evidence would have justified, if not required, the jury to find.   The defendant himself, however, made no use of the closet or sink.   Under this condition of things, presumably known to the plaintiff, he

leased of defendant the lower story of the building, which he used as a clothing store. The lease contained neither covenants to repair nor any warranty as to the condition of the premises. Plaintiff's lease gave him no right to use the closet and sink in the upper story. One morning during plaintiff's term he found that the water had overflowed the sink and run down into his store and caused the damage to his goods which he seeks to recover in this action. Upon examination it was found that the cause of the overflow was that a rag had been cast into the sink, which had closed up the strainer and waste pipe, and at the same time the faucet had been left open and the water running. It is not known who did this, neither is it known precisely when it was done, except that, in view of the circumstances, it must have been done that night or the previous evening. It is not pretended that defendant or his agent knew anything about it until after the injury was done.

There was evidence tending to prove that on a few former occasions some water from either the closet or the sink had run down into the store; that, when plaintiff informed defendant's agent of it, the latter promised to attend to it; and that on one occasion when the water-closet was frozen up he had it thawed out. But there was no evidence as to what was the particular cause of these previous overflows, whether from mere accident, the manner of construction, or from the negligent use of the closet or sink. The bare fact appears that for some unknown cause water came down on these occasions. There was also evidence tending to prove that sometimes the upper-floor tenants left the door of the closet unlocked, so that strangers from the street might have come up the stairs and gained access to the closet; but as there is no evidence that any one ever did so, or that this overflow was the result of any such cause, the evidence is wholly immaterial.

It is sought to hold defendant liable on two grounds: *First*, the alleged improper construction of the sink; and, *Second*, negligence in permitting it to become or remain out of repair.

In support of the first ground, some evidence was introduced tending to prove that the danger of overflow from negligent use of the sink would have been materially lessened by putting in a self-closing faucet, and also a second opening or overflow attachment, near the top of the sink, to carry off the water in case the strainer

in the bottom should become clogged.   But the evidence was un-contradicted that the sink was constructed in all respects in the usual way, that the faucet was of the kind ordinarily and almost invariably used in connection with such sinks, and that the escape was ample, if properly used, to carry off all the water that could possibly flow into the sink.

It is evident that there could have been no overflow unless two things occurred:    (1) Closing up the strainer; and (2) leaving the water turned on at the faucet,—a state of things which ordinary care could hardly anticipate.    The defendant owed the plaintiff no con-tract duty with reference to the condition of the sink.    Neither was he an insurer of the absolute safety of the premises or against the negligence of his tenants.    He is liable, if at all, only on the ground of his own negligence in the exercise of his general control and supervision over the closet and sink.    He was bound to exercise reasonable care to prevent them from becoming a nuisance or doing injury to others.    This duty rested upon the elementary maxim that a man must so use his own as not to injure others.    But reasonable care did not require defendant to so construct the sink as to reduce the possibilities of danger to an absolute minimum. The appliances furnished were ample, if properly used; they were there when plaintiff rented the lower story,—and we utterly fail to see why defendant owed him any duty to reconstruct the sink on some other plan, at least in the absence of any proof from ex-perience that the existing plan of construction rendered it unsafe.

The trial court evidently took the view that if the defendant was liable it was not because of the plan of construction, but because of his failure to keep it in repair.    The substance of his charge to the jury (after stating to them that there was a conflict of evidence as to whether defendant retained possession of the closet and sink, or surrendered it to his upstairs tenants) was that if he had surrendered possession and control to the tenants he was not liable, but that, if he still retained and exercised control, then it was his duty to keep them in repair, and if he neglected to do so, and dam-age resulted from such negligence, he was liable.    The effect of this charge (and the jury could not well have understood it other-wise) was that, if defendant retained control over the closet, then he was liable; in other words, that he was an insurer of its safe

condition as against the negligence, not only of his own tenants, but also of the whole world.   This was clearly erroneous.   Under such instruction the jury could hardly have done otherwise than find for the plaintiff.

But even if the jury had been correctly instructed as to the law, the evidence would not have justified the verdict.   The damage to plaintiff resulted from the negligent or willful acts of some unknown person or persons.   The defendant did not know of these acts, and could not in the exercise of reasonable care have anticipated them.   Even if the presumption would be that the acts were committed by one of his tenants, as already suggested, he was not an insurer against or responsible for their negligence or willful wrong.   Of course, we do not mean to be understood as holding that he would not have been liable if he had known that his tenants were in the habit of using the closet or sink in such an improper manner that it was liable to become a nuisance or a menace to plaintiff's property, and had failed to exercise reasonable diligence to prevent it.   Such failure to properly exercise his supervision and control over the premises would have been his own negligence.   But that is not this case.

Order reversed.

GILFILLAN, C. J., absent on account of sickness; took no part.

(Opinion published 60 N. W. 1085.)