(156 App. Div. 784.)

COHEN v. COTHEAL.

(Supreme Court, Appellate Division, First Department. May 29, 1913.)

1. LANDLORD AND TENANT (§ 166*)—INJURY TO PROPERTY OF TENANT—DEFECTS IN PREMISES.

A landlord is liable for damages caused to tenant by defects in that part of the premises retained by the landlord only when he had actual or constructive notice of the defects, and constructive notice cannot be predicated upon the existence of a defect not discoverable by inspection.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 647–655, 657–660; Dec. Dig. § 166.*]

2. LANDLORD AND TENANT (§ 169*)—INJURIES TO PROPERTY OF TENANT—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action by a tenant against his landlord for damages for the flooding of his premises from a leak in a pump, which the tenant claimed was in control of the landlord, evidence of the negligence of the plumbers engaged by the landlord to thaw out the frozen pipes and pump *held* insufficient to go to the jury.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 644–646, 664–667, 681–684; Dec. Dig. § 169.*]

Appeal from Trial Term, New York County.

Action by Rudolph Cohen against Sarah F. Cotheal. From the judgment dismissing the complaint, plaintiff appeals. Affirmed

See, also, 149 App. Div. 944, 134 N. Y. Supp. 1128.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Milton Mayer, of New York City, for appellant.
Francis Sims McGrath, of New York City, for respondent.

LAUGHLIN, J. This is an action by a tenant against his landlord to recover damages to goods in the premises leased, caused by a leak of water from a crack in the cylinder of a gas pumping engine.

The defendant is the owner of premises known as No. 496 Broome street, borough of Manhattan, New York, and of a five-story loft building thereon. The plaintiff was in possession of the basement and first floor of the building under a lease with the defendant. The copartnership firm of Adler & Isaacs was in possession of the second and third floors, and their lease obligated them to keep the premises in repair, including repairs to the plumbing work, water, and gas pipes, and fixtures at their own cost and expense, and to "take charge of and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

operate the gas engine in said premises, and to pay for gas for same and keep said engine in good order and condition." The fourth and fifth floors were occupied by other tenants.

Water for the third, fourth, and fifth floors was supplied from a tank on the roof of the building; and the purpose of the pumping engine, which was on the third floor, was to keep that tank supplied with water, and to accomplish that the engine was operated from time to time, and it was designed to shut off automatically when the tank became full. The engine was owned by the defendant, and is described as a "Rider & Ericson" double pump, consisting of a flywheel and two cylinders, with a ramrod in each cylinder; but one of the cylinders could be disconnected, and the other operated alone. The only witness who described the method of operating the engine said:

"When we wanted water, we lit the gas underneath the cylinder, and had it lit for about 10 or 15 minutes, when we started the flywheel going. * * * When you lit the pump, it would start going, and kept the piston rods on each side of it. The piston rod was operated by the gas, and when you got enough heat on, it started the flywheel and went going."

One of the jurors, who was an engineer, by consent described the engine as follows:

"There is a cylinder containing a ramrod, with what they call a cylinder head inside, and as the gas engine causes the rod to go forward and backwards, it sucks the water up and pipes it beyond the cylinder head inside, and out through another pipe, thereby forcing it up to the tank, or any designated place where the pipe runs."

And he was permitted without objection to say, in answer to a question by the court, that he could not account for the crack in the cylinder.

In the lease to plaintiff, printed provisions, imposing the duty of keeping the premises including all plumbing in repair upon the tenant, were stricken out before execution, leaving no provision on the subject. Prior to the execution of the lease under which the plaintiff held at the time in question, he had occupied upper floors of the building as a tenant, and the defendant had informed him that one Cammann was her agent, and would do anything required, if communicated with over the telephone, and during such tenancy certain repairs were made by the agent at the request of the tenant.

The plaintiff gave evidence tending to show that on or about the 9th or 10th day of February, 1899, the water pipes were frozen, and that on going upstairs he found ice on top of the pump; that he notified defendant's agent, who promised to send a plumber; that within an hour and a half or two hours plumbers came and looked over the pipes and a meter, which was installed in plaintiff's basement; that the plumbers stated that the pipes were all frozen, and that it would be necessary to take the meter out and cut the water off from the building; that they removed the meter, and four or five days later, and on the 15th of February, brought it back and connected it up, and examined the pipes throughout the building, and the pump, and stated to plaintiff that the pump was frozen; that they left about 3 o'clock

in the afternoon, saying that they would return in a short time, but they did not until after the flooding of the premises; that in the meantime, since the pipes were first frozen, no water flowed through them, but on the 15th the weather had moderated, but still, on turning the faucets, no water flowed from the pipes; that the plumbers, before leaving on the 15th, informed plaintiff that they had tried the pump "to see whether there was any water in there, and there was no water," and that "the pump was dry"; that the plumbers made no attempt to thaw out the pipes, and did no work "except in the basement on the meter"; that after the plumbers left other tenants "tried to work the pump, but could not; they tried to heat it up; it would not work;" that the pump worked, but no water came through it; and that there, was no leak until after the close of business on the 15th. On the following morning a cylinder of the pump was found to be cracked, and large quantities of water had come through the crack and run down through the building, causing the damages of which the plaintiff complains. The plaintiff also testified that there was a stopcock in his basement, which controlled the entire supply of water for the building, and that the plumbers turned this stopcock off before they left the building the last time.

There is no evidence with respect to the capacity of the tank on the roof of the building, or as to whether or not there was water in it which had frozen; but in view of the quantity of water which must have escaped, according to the testimony of the plaintiff, it cannot be reasonably inferred that there was sufficient water in the pipes and tank before the water was cut off in the basement to account for the amount which flooded the premises. It is evident, therefore, that the stopcock in the basement, which was in the possession and under the control of the plaintiff, must have been turned on after the plumbers left in order to permit the flood of water into the pipes and building. The evidence indicates that the water, owing to the greater pressure, rose higher in the pipes at night than in the daytime; and it is quite probable that the ice in the pipes thawed sufficiently to permit the water to rise, and that it then escaped through the crack in the cylinder.

[1, 2] The negligence with which the defendant is charged is, in effect, the failure of the plumbers to thaw out the pipes and to discover the crack in the cylinder. Assuming that the defendant retained sufficient control over the pumping engine to make it her duty to her tenants, other than Adler & Isaacs, to inspect it and keep it in repair, which is by no means clear (see Underhill on Landlord and Tenant, vol. 2, § 508, and cases cited: Levine v. Baldwin, 87 App. Div. 150, 84 N. Y. Supp. 92; Peil v. Reinhart, 127 N. Y. 381, 27 N. E. 1077, 12 L. R. A. 843; Dollard v. Roberts, 130 N. Y. 269, 29 N. E. 104, 14 L. R. A. 238), that it is not, in the view we take of the evidence, necessary to decide that question, we are of opinion that the plaintiff has failed to show that the defendant was negligent. The most favorable view of the evidence to the plaintiff would be that the cylinder was cracked at the time the plumbers were there, and that they either discovered it or should have discovered it; but, even so, it is difficult to discern any theory upon which negligence can be attributed to them,

since, according to the testimony of the plaintiff, they cut off the water from the entire building, which removed any danger that the premises would be flooded.

Moreover, the evidence was insufficient to take the case to the jury upon the theory that the crack in the cylinder existed and was discoverable at the time the plumbers inspected the engine. If the crack was caused by water freezing in the cylinder, it would be the merest speculation to infer that the crack was caused while the water was freezing, and then opened to such an extent as to render it discoverable on reasonable inspection. In fact, there is no evidence with respect to the length or width or location of the crack on the cylinder from which it might be inferred that it could have been seen, if it then existed. The only thing upon which a landlord is liable for defects in that part of the demised premises remaining under his control is that he had actual or constructive notice of the defect, and there being no evidence of actual notice, constructive notice cannot be predicated without evidence of the existence of a defect, *discoverable by reasonable inspection,* for such a length of time that it would have been discovered by the exercise of reasonable care. Stackpole v. Wray, 74 App. Div. 310, 77 N. Y. Supp. 633; Idel v. Mitchell, 158 N. Y. 134, 52 N. E. 740.

Furthermore, it may be that there was ice in the cylinder when the engine was set in motion by the plumbers, or by the tenants after the plumbers left, and that heating the engine caused the crack, or that the stroke of the piston was such as to crush the ice between it and the cylinder with such force as to cause the crack; but whether, if that caused the crack, it was the result of the operation of the engine by the plumbers or by the tenants cannot be inferred from the evidence with any degree of certainty, for, while it would likely take place, if at all, early in the operation of the engine, still there is no evidence with respect to the extent of the operation by the plumbers.

It follows, therefore, that the judgment should be affirmed, with costs. All concur.