[Civ. No. 16077. Second Dist., Div. One. Aug. 17, 1948.]

RICHARD G. FORRESTER et al., Respondents, v. HOOVER HOTEL & INVESTMENT COMPANY (a Corporation), Appellant.

Sidney A. Moss and Henry F. Walker for Appellant.

Forrest A. Betts and Gerald F. Smith, Jr., for Respondents.

WHITE, J.—This is an appeal by defendant landlord from a judgment entered upon the verdict of a jury in favor of plaintiff tenants, husband and wife, in an action for damages for personal injuries to the wife caused by the falling of a wall bed in a furnished apartment.

The complaint charged that plaintiffs were tenants under a month-to-month tenancy of an apartment which, ''among other rooms, includes a living room containing a wall bed which was specifically provided by defendants for the use and benefit of plaintiffs. That the defendants and each of them had so carelessly, negligently and wrongfully equipped, maintained and repaired said wall bed that while said plaintiff was in the act of lowering said wall bed from its upright

position to a horizontal position, said wall bed became detached from its fastenings and fell upon and struck the said plaintiff Nellie Pauline Forrester." The answer contained a general denial and the affirmative defense of contributory negligence.

The cause was submitted to the jury under instructions to the effect that the landlord was not liable for injuries resulting from defects which could be discovered by reasonable inspection, nor for latent defects unknown to him. The jury was advised, "But if when the premises are delivered to the tenant the landlord knows of some unsafe condition in or on the same, and if that condition is not then known to the tenant and is not such as would be discovered by a person of ordinary prudence making a reasonable inspection of the premises, and if the landlord fails to inform the tenant of that condition, . . . the landlord's failure to disclose the danger is actionable negligence." No instructions were given or requested upon the theory (hereinafter discussed) of breach of implied warranty that the furniture was fit for use. (*Fisher* v. *Pennington*, 116 Cal.App. 248 [2 P.2d 518].)

Defendant landlord purchased the apartment house in April, 1943. Prior thereto the plaintiffs had become tenants therein, occupying apartment 307. In October, 1943, they moved to apartment 206, which they were occupying at the time of the accident, December 2, 1944, some 14 months later. Both apartment 307 and apartment 206 were equipped with the same type of bed and plaintiff wife was familiar with the operation of such type of bed, although she knew nothing about its construction. During the 14 months after they moved into apartment 206 until the happening of the accident the bed was used without any indication that it was defective in any way. There was no showing that repairs had ever been made to the bed or its attachments or that the landlord had any actual knowledge that its installation was other than in the approved manner.

The bed was a folding bed with the head thereof attached to the door of a closet, the door being pivoted at its top by fittings and a prong or pin in the door and door frame, and pivoted at the bottom by a fixed pivot attached to the bottom of the door and resting in a socket set in the floor. The foot end of the bed could be raised and the bed thus folded up against the door, and while in that position the door could be revolved to move the bed into or out of the closet.

The accident involved the upper pivoting device. This consisted of a metal plate fastened to the top of the door, with an

attached upright prong or pin. Another metal plate was inset flush with the top door frame and fastened thereto with three screws. This plate contained a hole into which the upright prong or pin of the door attachment fitted loosely so that it could turn easily. When plaintiff wife attempted to lower the bed at the time of the accident the upper metal plate (attached to the door frame) and the three screws were pulled from the door frame; as testified by one of the plaintiffs, "the whole works came out."

There was expert testimony to the effect that the bed was not installed in the "approved" manner, in that the screws holding the plate to the top door frame were inadequate. There was, however, no evidence that the landlord, who purchased the building in 1943, had any knowledge of the alleged defect.

Relying upon the general rule that a landlord is not liable for injuries to a tenant resulting from a latent defect in the premises, in the absence of proof of knowledge and concealment on his part, appellant urges that the trial court erred in denying his motions for nonsuit, judgment notwithstanding the verdict, and for a new trial; pointing out that the trial proceeded solely upon the theory of negligence; that there was no claim by pleading or proof of any warranty, express or implied that the landlord, at the time of the letting, knew of the claimed defect in the bed and failed to disclose to the tenant. It is appellant's contention that the evidence fails to disclose knowledge on the part of the landlord of any defect existing at the time of the letting. This contention must be sustained. It is undisputed that the wall bed functioned normally and appeared to the tenants to be in good condition for a period of 14 months prior to the accident. The sole ground upon which respondent seeks to sustain the implied finding of knowledge and concealment on the part of the landlord is based on the following set of facts: When the plaintiffs moved into apartment 206, plaintiff Mrs. Forrester and the then manager of the apartment house executed a "Standard Apartment Contract and Inventory", which contained the provision that "The tenant hereby acknowledges receipt in good condition of the above listed furniture and equipment of said apartment, . . . ." The furniture so received was indicated by pencil check marks opposite the items of a printed list. The agreement was in duplicate, the original retained by the landlord and the carbon copy by the tenant. A pencil check mark appeared opposite the item "O'stuffed

Bed'' on the original contract offered in evidence by the defendant landlord, while a corresponding mark did not appear on the tenant's carbon copy, also in evidence. It is urged by respondent that the jury was entitled to believe that the check mark opposite ''O'stuffed Bed'' was an afterthought, placed there for the purpose of proving that the tenant acknowledged receipt of the bed in good- condition, and that therefrom the jury could infer guilty knowledge on the part of the landlord that the bed was not in good- condition, since the tenant testified. This contention must be rejected. While the jury might believe that the check mark was added subsequent to the execution of the contract or after the accident had occurred, such belief affords no basis for an inference that at the time of the letting the landlord had knowledge of a latent defective condition of the wall bed and concealed the fact from the tenant. At the time plaintiffs moved into the apartment Mrs. Forrester was shown the apartment by the then manager of the building, who checked off the items of furniture and equipment on the printed inventory. There was no ''O'stuffed Bed'' in the apartment, but, as Mrs. Forrester stated, ''only a wall-bed.'' It may well be that only for this reason the item was not checked off by the manager at the time. Mrs. Forrester testified in part:

''Q. Did you check anything other than the usual dishes and so forth? A. That is all.''

Furthermore, the undisputed evidence is that at the time of the letting and for 14 months thereafter the bed appeared to be in good condition. Mrs. Forrester testified that she saw nothing out of the ordinary about the bed at the time she moved in, nor at any time thereafter.

It must therefore be held that there was presented no substantial evidence upon which the jury could base a finding that the defendant landlord had knowledge of a latent defect in the bed at the time of the letting. The judgment therefore cannot stand, unless respondents' contention that the verdict and judgment may be upheld on the theory of warranty, although there be no showing of knowledge and concealment on the part of the landlord, can be sustained.

In support of this contention respondents rely upon the case of *Fisher* v. *Pennington,* 116 Cal.App. 248 [2 P.2d 518], in which it was held that a folding bed similar to the one involved in the case now under consideration was personal property. In the cited case the court said: ''The renting of the

bed, personal property, attached to the door, real property, presents a mixed contract of hiring of personalty and realty. If the article furnished or supplied is connected or attached with another article or contrivance only incidental to the use of the article furnished, then it is reasonable to conclude that the hirer or renter warrants not only the article furnished but the incidental articles connected therewith and necessary to its proper use.'' The court held that to the extent that the door was a necessary adjunct of the bed, it could, so far as the facts there involved were concerned, be considered as personalty.

In the following language the landlord was held liable without discussion of any question of knowledge or concealment:

''Personal property, let to a hirer or renter, must be put into condition fit for its intended purpose or use. (Civ. Code, sec. 1955.) Furniture supplied to the renter of a furnished apartment imposes on the owner a liability 'for all damages caused by the defects or *devices* of the thing deposited' (Civ. Code, sec. 1833). In the renting of a furnished apartment there is an implied warranty that the furniture is fit for use or occupation. . . .

''. . . A hotel-keeper is required to keep the furniture in good repair and this irrespective of whether the rental is for one day or one month. The same rule should and does apply to an apartment house-keeper (36 Cor.Jur. 48). Keepers of furnished apartments have the same lien upon baggage, etc., as the hotel-keepers. (See Civ. Code, secs. 1861a, 1862.) Every person is responsible by his want of ordinary care in the management of his property for an injury sustained by the use of such property except in cases where the user has brought injury upon himself. (See Civ. Code, sec. 1714.) By the rental contract plaintiffs were conveyed an estate in the demised premises and they were entitled to the use and enjoyment of their habitation. A tort-feasor is liable notwithstanding the existence of a contract. If the cause of action arises from a breach of duty growing out of a contract it is *ex delicto*.

''In omitting to perform a duty imposed under the law, namely, to supply a bed safe to sleep in, appellants were guilty of negligence. It is not necessary in this case to invoke the doctrine of *res ipsa loquitur*.''

We are persuaded that to hold the landlord liable upon warranty for any injury resulting from a latent defect in the

equipment or furnishings leased with a furnished apartment would be to make the landlord virtually an insurer of the safety of the tenant. ■■■ We are satisfied that the correct rule, supported in this state by a long line of decisions, is that a landlord is not liable to the tenant for injuries due to a defective condition or faulty construction of the demised premises, in the absence of fraud, concealment or covenant in the lease (*Shotwell* v. *Bloom,* 60 Cal.App.2d 303, 309 [140 P.2d 728]; *Colburn* v. *Shuravlev,* 24 Cal.App.2d 298, 299 [74 P.2d 1060]).

We are not unmindful of the rule prevailing in some jurisdictions, that one who leases for a short term of a few days, weeks or months, a fully furnished house or apartment supposedly equipped for immediate occupancy as a dwelling without the necessity of any fitting up or furnishing by the tenant, impliedly agrees that the house or apartment and its appointments are suitable for occupation in their condition at the time. (*Hacker* v. *Nitschke,* 310 Mass. 754 [39 N.E. 2d 644, 139 A.L.R. 257]. See annotation in 139 A.L.R. 257, 261.) But in the case of *Bolieau* v. *Traiser,* 253 Mass. 346 [148 N.E. 809], it was emphasized that the warranty of habitability of premises leased furnished is implied only with regard to the state of the premises at the beginning of the tenancy, and does not cover defects which arise later.

It is to be noted that in the case of *Fisher* v. *Pennington, supra,* relied upon by respondents, the injury was sustained during the first month of the tenancy, while in the Massachusetts cases cited above application of the rule contended for by respondents is limited to the condition of the furniture or premises at the inception of the tenancy.

■■■ In the case at bar the accident occurred some 14 months after the tenants went into possession, during all of which time the bed appeared to be in good condition and was safely usable. If, upon the authority of *Fisher* v. *Pennington, supra,* there be a liability attaching to the landlord upon an implied warranty that where a completely furnished apartment is rented, it is impliedly agreed that the apartment and its appointments are suitable for occupancy in their condition at the time, then we hold that such liability under the theories advanced in the last-cited case is confined to the condition of the premises at the beginning of the term and not to conditions which, unknown to the lessor, subsequently arise. In the case with which we are here concerned, as heretofore

noted, respondents detected no defect in the bed, its construction or attachment to the door. Any defect was therefore latent, and according to the testimony was equally unknown to the appellant landlord.

For the foregoing reasons the judgment is reversed.

York, P. J., and Doran, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied October 14, 1948. Carter, J., voted for a hearing.