[Civ. No. 17833. Second Dist., Div. Three. Apr. 17, 1951.]

CONNIE SHANANDER, Respondent, v. WESTERN LOAN AND BUILDING COMPANY, Appellant.

Cushman & Wetherbee for Appellant.

Maurice J. Hindin for Respondent.

BARTLETT, J. pro tem.—This is an appeal from a judgment in an action wherein a jury rendered a verdict against appellant for damages to personal property in the sum of $1,500.

The facts are not in dispute and are briefly these. Respondent was a lessee of an apartment in an apartment house which contained 72 units. Water was supplied to the tenants which was brought to this building by pipes. When respondent left her apartment on September 18, 1948, at about 6:15 p. m., her apartment was dry and in good order. She returned between 2 and 3 o'clock in the morning and found her apartment dripping wet as were her personal effects located there. The manager of the apartment house, between 2 and 3 o'clock of that same morning, was called to the apartment above the one occupied by respondent and found water pouring out of a break in the cold water pipe leading from the floor to the faucet in the bathtub. He immediately shut off the water in the entire apartment house. An examination disclosed that the break had taken place underneath a curving edge of the bathtub where it was hidden from view. A metal flange concealed in a nut into which the pipe fitted had broken permitting the pipe to pull out and water to flow out of the pipe onto the floor. The appellant had had no notice of any fault in this plumbing up to this time.

The complaint was based on two causes of action. The first one was on negligence of the landlord in the manner in which it managed, operated and maintained its apartment building. The second did not allege negligence but alleged that appellant maintained on its premises large quantities of water and other fluids which, on the date of the accident, it "suffered, caused and permitted" to flow upon and over the personal effects kept by respondent in her apartment.

The court refused all instructions offered relating to negligence and instructed the jury that, as a matter of law, the defendant was liable for damages suffered as a proximate result of the accident and that the only question submitted to them was the amount of respondent's damages, if any. The only question, therefore, before us on this appeal was whether or not this was a case of absolute liability. Respondent's theory as to why it was, is clearly set forth in an instruction which the

court, including the words in Latin, gave to the jury. It was as follows: "You [are] instructed that the water which did the injury to plaintiff, if any, was not a natural stream flowing across defendant's premises, but was brought upon the premises by·artificial means. And the rule is general that, where one brings a foreign substance upon his premises, he must take care of it and not permit it to injure his neighbors. The law upon the subject is tersely expressed in the maxim, *sic utere tuo ut alienum non laedas.*

" 'It is the rule that where an injury arises out [of], or is caused directly and proximately by the contemplated act or thing in question, without the interposition of any external or independent agency which was not or could not be foreseen, there is an absolute liability for the consequental damage, regardless of any element of negligence either in the doing of the act or in the construction, use or maintenance of the object or instrumentality that may have caused the injury.' ''

The first paragraph of this instruction is taken verbatim from one of the cases upon which respondent relies to support the judgment. (*Parker* v. *Larsen,* 86 Cal. 236, 238 [24 P. 989, 21 Am.St.Rep. 30].) This was an action for an injunction and damages where the defendant was an adjoining landowner to the plaintiff. Defendant so irrigated his land that by reason of the means employed the excess of water not absorbed, formed a pool 200 or 300 feet in length and from 6 to 10 inches in depth. There was sufficient slope to the property so that water would flow from the land of defendant to that of plaintiff and by percolation it saturated plaintiff's land to such an extent that he was damaged in the sum of $100.

The second paragraph of the quoted instruction is an exact quotation from another case relied upon by respondent, that of *Green* v. *General Petroleum Corp.,* 205 Cal. 328, 334 [270 P. 952, 60 A.L.R. 475]. This was an action to recover damages for injuries to property occasioned by "blowing out" of an oil well during drilling operations. When the well erupted a stream of oil, gas, mud and rocks shot into the air and onto respondent's property about 200 feet from the well. It was held that there was no negligence on the part of respondent in this drilling operation. In considering the question of liability the court said (p. 331): "It is a matter of common knowledge that the inner earth contains powerful gaseous forces, frequently found in proximity to and in connection with deposits

of petroleum substances. It was a known fact that a tremendous pressure of gas underlay the particular locality in which appellant was carrying on its drilling operations. It proceeded with full knowledge of the situation.'' The court later promulgated the rule applicable to such cases as follows (pp. 333, 334): ''Where one, in the conduct and maintenance of an enterprise lawful and proper in itself, deliberately does an act under known conditions, and, with knowledge that injury may result to another, proceeds, and injury is done to the other as the direct and proximate consequence of the act, however carefully done, the one who does the act and causes the injury should, in all fairness, be required to compensate the other for the damage done.'' The same principle is stated in Restatement of the Law of Torts, volume III, sections 519 and 520, pages 41 and 42: ''Section 519. Miscarriage of Ultrahazardous Activities Carefully Carried On. Except as stated in sections 521-4, one who carries on an ultrahazardous activity is liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent the harm.

''Section 520. Definition of Ultrahazardous Activity. An activity is ultrahazardous if it (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and (b) is not a matter of common usage.'' Under comment on clause (a) of section 520 we find the following example given in the text on page 44: ''Again, there is always a chance that in drilling an oil well a gusher will be struck which while ultimately profitable to the owner of the well will do serious harm to the lower lands in its vicinity.'' This was the exact situation in the case of *Green* v. *General Petroleum Corp.*, *supra*, 205 Cal. 328, 334.

The factual situation in *Nola* v. *Orlando*, 119 Cal.App. 518 [6 P.2d 984], and the other cases upon which the respondent relies are similar to those we have referred to in discussing *Parker* v. *Larsen, supra*, 86 Cal. 236, 238, and the court applied to them the same principle of law. There is a sharp distinction between these cases wherein the doctrine of absolute liability has been applied and those in the case before us. This is a case of a tenant against the landlord. There was nothing in defendant's conduct which necessarily involved a risk of injury to the tenant's property. No act of defendant

corporation was under known conditions or knowledge that damage to its tenant might result. The landlord's conduct in furnishing water to its tenant was a matter of common usage and an ordinary and natural use. It was fulfilling a duty imposed upon it by law. Health and Safety Code, section 17450, provides: "Every plumbing fixture installed in any building shall be provided with running water."

The law applicable to cases shown by the facts in this one, is set forth in 32 American Jurisprudence, pages 626 and 627, as follows: "The rule that one who, for his own purposes, brings on his lands and collects and keeps there anything likely to do mischief if it escapes must keep it confined at his peril is not applicable to the act of a landlord in providing his building with artificial means for supplying it with water. Such introduction of water is an ordinary and natural use, and where the landlord has not been guilty of any negligence in the construction or maintenance of the water appliances in his building, he is not liable for damage sustained by his tenants by reason of an overflow."

It is established law in California that a landlord is not an insurer of the safety of his tenant's property and is not liable to the tenant for a defective condition of his premises in the absence of negligence or some malfeasance on his part. (15 Cal.Jur. 704.) And as said in *Forrester* v. *Hoover Hotel & Inv. Co.*, 87 Cal.App.2d 226, 231, 232 [196 P.2d 825]: "We are persuaded that to hold the landlord liable upon warranty for any injury resulting from a latent defect in the equipment or furnishings leased with a furnished apartment would be to make the landlord virtually an insurer of the safety of the tenant."

We have not been referred to any cases in this or any other jurisdiction where it has held that the act of a landlord in providing his building by artificial means with water and supplying it to his tenants makes the landlord the insurer of the property of occupants on a lower floor. In each of the cases we are about to call attention to from foreign jurisdictions, facts were involved relating to the overflow of water from defective plumbing, bathtubs or toilets from the space let to a tenant on an upper floor onto the personal property of a tenant of a lower floor. That is just the case we have here. In each of these cases it was held that the landlord could not be held liable in the absence of a showing of negligence or malfeasance on his part. The cases referred

to are: *Mendel* v. *Fink*, 8 Ill.App. 378; *Greene* v. *Hague*, 10 Ill.App. 598, 602; *Tentzer* v. *Erlanger*, 117 N.Y.S. 158; *Mendelson* v. *Bona*, 63 N.Y.S.2d 410; *Cohen* v. *Cotheal*, 156 App. Div. 784 [142 N.Y.S. 99]; *Narbonne* v. *Storer*, 121 Minn. 505 [141 N.W. 835]; *Haizlip* v. *Rosenberg*, 63 Ark. 430 [39 S.W. 60]; *Rosenfield* v. *Newman*, 59 Minn. 156 [60 N.W. 1085]; *White & Co.* v. *Montgomery*, 58 Ga. 204; *Franklin Fire Ins. Co.* v. *Noll*, 115 Ind.App. 289 [58 N.E.2d 947, 951].

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.

The opinion was modified to read as above printed and a petition for a rehearing was denied May 1, 1951. Respondent's petition for a hearing by the Supreme Court was denied June 14, 1951.