[S. F. No. 14891.   In Bank.—November 1, 1933.]

CHARLES L. PERRY, Respondent, v. D. J. & T. SULLI-
VAN, INC., et al., Appellants.

Daniel W. Burbank, C. F. Laumeister, William M. Abbott, K. W. Cannon, Cyril Appel and Ivores R. Dains for Appellants.

Ford & Johnson, David A. Fall and Fletcher A. Cutler for Respondent.

CURTIS, J.—This is an appeal from a judgment for damages in favor of respondent and against appellants in the sum of $22,000, in an action to recover on account of personal injuries sustained by the plaintiff in a fall from a ladder. After the return of the verdict by the jury in favor of the plaintiff, defendants' motion for judgment notwithstanding the verdict was denied, and after the entry of the judgment, the defendants' motion for a new trial was denied.

The facts of the case in the main are not disputed. The Industrial Construction Company was engaged, under a contract with the owner of a one-story building located on Fillmore Street, in San Francisco, in converting said building into a two-story brick building. This work required the raising and lowering of the existing roof, and the contract to perform this particular work was let by the Industrial Construction Company to a subcontractor, D. J. & T. Sullivan Company, hereinafter referred to as the Sullivan Company. John B. Smith was foreman in charge of the work by the Sullivan Company. Charles L. Perry was the foreman of the Industrial Construction Company and had under his direction the carpenters, bricklayers and laborers engaged in the remodeling of the building. The Sullivan Company was an independent contractor, and it is conceded that under the contract the sole work of said company was to raise and lower the roof of the building. It was the duty of the employees of the Industrial Construction Company to do all of the bricklaying, carpentry work and the work of removing the roof from its connection with the original concrete walls so that the Sullivan Company could raise it. The

system employed was to raise the roof of the building to an elevation of approximately eight inches higher than the height to which the exterior walls were to be constructed, in order to permit the bricklayers and carpenters sufficient room to work; build up the old walls to the correct height; and then lower the roof back on the newly constructed walls. The Sullivan Company, in pursuance of said plan of work, raised said roof to the required height of eight inches above the ultimate height of the building and left the job. The work of raising the roof was done by means of screws and it was not necessary for any of the employees of the Sullivan Company to go upon the roof. It was necessary, however, for the carpenters and employees of the Industrial Construction Company to have access to the roof, and Perry, the foreman of said company, removed the glass from a skylight which was on the roof, and constructed a ladder running from the second floor through the skylight to the roof. It was necessary because of the limited space that the ladder should be placed in a position almost perpendicular, about 80 degrees to 85 degrees. In order to render this ladder more safe, it was spiked at the bottom to two double planks, one on top of the other, which extended on joists across an opening to the lower floor. The double planks in turn were spiked to the joists. Perry had ordered one of his men to fasten the ladder with spikes at the top, but not being satisfied with the job, had himself put an extra collar around the top of the ladder to make it safe. This collar consisted of two pieces of wood, 1 inch by 6 inches, on each side of the ladder and a third piece of the same dimensions across the front of the ladder to prevent the ladder coming forward toward anyone coming up it. On August 28, 1929, when Perry came to work in the morning, he found that Sullivan Company was there ready to lower the roof on to the walls. Approximately an hour before the accident Perry saw Smith, foreman for the Sullivan Company, and another employee of that company, loosening the base of the ladder by striking it with a jack handle. Perry did not see anyone loosen the top of the ladder, and there is no testimony as to whether or not the bottom of the ladder was completely loosened by the foreman and employee of the Sullivan Company. Thereafter the crew of workmen under the supervision of Smith lowered the roof on to the walls of the building and prepared to leave

the job. According to the testimony of Perry, he was on the lower floor when Smith called to him to come up to the second floor and go up to the roof to see that the job of lowering the roof had been properly performed. Smith at the time was standing at the base of the ladder. Perry noticed that the bottom of the ladder had been refastened and shook it up and looked down to see that it was secure. Smith said, "Everything is all right." Perry inquired, "Did you fasten that ladder?" Smith replied, "That is all fixed." Perry, who was a large man weighing approximately 190 to 200 pounds, then ascended the ladder. Just as he reached the top of the skylight, the ladder swung out from the top, he tried to grasp hold of something but missed, and he fell through the opening of the second floor to the concrete floor of the first story. Perry was so seriously injured that he was in the hospital for two months, and at the time of the trial two years later was unable to carry on his work as construction foreman. There can be little doubt, and it seems to be conceded by both sides, that the proximate cause of the accident was the fact that the ladder, being unfastened at the top, swung outward and away from the curb of the roof. When the roof was lowered the weight bore directly on the ladder, with the result that the nails and cleats holding the top of the ladder pulled out and broke so that when the roof came down, the top of the ladder went up, wholly free and loose, through the opening in the skylight.

Under these facts and circumstances, as above narrated, who was responsible for the accident, and who is liable for the serious injuries suffered by the plaintiff Perry? The jury found that the accident was due to the negligence of the defendant Smith, and brought in a verdict for $22,000 against said defendant and his employers, the Sullivan Company. Appellants challenge the verdict of the jury, and the judgment based thereon, and contend that, conceding the facts to be as above set forth, respondent's own negligence was the sole proximate cause of his injuries, and that it can be said, as a matter of law, that appellants were not negligent. With this contention we cannot agree.

Appellants first argue that respondent Perry in nailing the ladder to the roof, which the Sullivan Company was under contract to lower, must be deemed as to said company to be a mere licensee to whom said appellants owed no duty

other than to refrain from wilful and wanton injury. This is not the true rule. ■ There is no dispute as to the status of the employers of the respondent and the appellant Smith respectively while on the premises of the owner. Each was there under contract to perform separate and distinct work on the building, independent of each other. As to the owner, they were each invitees, and as to each other they were strangers between whom there was no privity of contract. As such contractors, they owed to the employees of each other the same duty of exercising ordinary care for their safety during the progress of the work as they owed to the public generally. (Secs. 1708, 1714 and 3281, Civ. Code; 8 Thompson on Negligence, sec. 685; *Hall* v. *Barber Door Co.,* 218 Cal. 412 [23 Pac. (2d) 279].) The duty of care in the instant case was not only to refrain from the infliction of wilful or wanton injury, but to exercise ordinary care for the safety of the employees of the other contractor on the building.

■ ⸱ Appellants claim that the responsibility for the safe condition of the ladder was the responsibility of the respondent and not the responsibility of the appellants, and insist that inasmuch as there was no duty on the part of the appellants to keep the ladder in a safe condition, they should not be held liable for any injury resulting from the fact that the ladder was not in a safe condition. They point out that, according to the testimony of Perry himself, the only duty of the Sullivan Company was to raise and lower the roof, that all of the carpentry work was to be done and performed by employees of the Industrial Construction Company, for whom he was foreman, and that he had never seen any of the Sullivan Company men on the roof, and that it was not necessary for them in the discharge of their duties to have access to the roof. It is true that if none of the employees of the Sullivan Company had interfered in any manner with the ladder, no responsibility for any injury occurring as a result of the dangerous condition of the ladder could be placed upon the Sullivan Company or their employees for the reason that there was no obligation upon them to keep the ladder in a safe condition. But that is not the situation here. Smith, foreman for the Sullivan Company, did interfere with the ladder and voluntarily assumed control of it, and having done so, he thereby undertook the duty of using

ordinary care to see that it continued to be safe for the use of others engaged in work on the building, whose duties required them to make use of the ladder. We do not wish to state that by the voluntary assumption of control over the ladder by Smith, he thereby became an insurer of the safety of anyone thereafter using the ladder. We do state, however, that by such voluntary assumption of control over the ladder he did incur the duty of using ordinary care to the end that no injury should occur as a result of a dangerous condition of the ladder. ''The true rule of liability on the part of a voluntary undertaker should be this, that he be required to exercise that degree of care and caution which would seem reasonable and proper from the character of the thing undertaken.'' (*Avery* v. *Thompson*, 117 Me. 120 [103 Atl. 4, 6, Ann. Cas. 1918E, 1122, L. R. A. 1918D, 205].) ''One who undertakes to do an act or perform a service for another is bound to use reasonable care and skill in the performance thereof and is liable for his failure in this respect, although his undertaking was purely voluntary and he was not under any obligation to do such act or perform such service.'' (45 Cor. Jur., p. 646; *Parker* v. *Hodgson*, 172 Ala. 632, 635 [55 So. 818].) There is in the record the testimony of Perry that about an hour prior to the time of the lowering of the roof he saw Smith and another employee of the Sullivan Company knocking the base of the ladder loose with a jack handle and that subsequently he observed Smith refastening the ladder at the bottom. It follows that, although in the first instance no duty was cast upon the appellants to replace or maintain the ladder in a safe condition, when they voluntarily assumed the duty of refastening the ladder, they were obligated to exercise due care in the performance thereof, and were liable for any failure in that respect.

█ Appellants' position is that they did exercise due care in refastening the ladder at the base thereof, and that since there is in the record no evidence to show that appellants knew that the ladder had been fastened to the roof at the top, and no evidence that the appellants ever had any actual or constructive notice or knowledge that the ladder had become unfastened when the roof was lowered, in the absence of such knowledge, appellants cannot be said to be negligent in failing to remedy some defect in the ladder, of which they were in total ignorance. It must be borne in

mind that the jury, in determining the question of whether or not the appellants used ordinary care under the circumstances, were entitled to indulge in legitimate inferences to establish other facts not directly in evidence. (*Moore* v. *McDonald,* 122 Cal. App. 61 [9 Pac. (2d) 556].) While it is true that there is no direct evidence in the record that Smith had actual notice of the fact that the top of the ladder had been fastened to the roof—there being in the record no evidence as to whether Smith did or did not actually know of the fastening of the ladder at the top—there is direct evidence from which it is reasonable to infer that Smith did have notice of this fact. Thus, the evidence relative to the physical facts of the case would justify the inference of actual knowledge. The fact that the ladder, which was approximately 20 feet in height, was placed in an almost perpendicular position, together with the fact that a collar of wood had been nailed around the ladder at the top, would of itself be notice to anyone handling the ladder that the ladder was fastened at the top. These facts coupled with the fact that Smith knocked the ladder loose at the bottom preparatory to lowering the roof clearly demonstrates that Smith was in fact aware that the ladder was fastened at the top. Otherwise, why should he pry the ladder loose at the bottom? If Smith did know that the ladder was fastened at the top, and we think the inference is logical and reasonable that he did know, then he must have known of the possibility that the lowering of the roof would detach the ladder at the top and render it unsafe for the use of the workmen on the building. This being so, when he undertook to fasten the ladder, it was his duty in the exercise of ordinary care to ascertain whether or not the top of the ladder had in fact become unfastened and if it had become unfastened to replace it in the condition it was in before he assumed control over it.

Although appellants concede that the proximate cause of the accident in this particular instance was the fact that the top of the ladder, being unfastened, swung away from the wall, nevertheless they question whether the ladder unfastened at the top was so dangerous as to require appellants to appreciate the danger of leaving it unfastened at the top. They point out that subsequent to the accident two other men descended the ladder before it was refastened and neither of

them fell to the floor below. This fact is not conclusive proof that the ladder was not in a dangerous condition. Undoubtedly, after the serious accident to Perry, the men using the ladder exercised extreme caution in the use of the ladder and the conditions were not therefore the same. Moreover, it is a fact that the man who descended the ladder immediately after the accident to Perry was a much lighter man than Perry. Whatever may have been the reasons why the other men were not injured, the fact remains that Perry was injured, and that the jury were satisfied from the surrounding circumstances that the danger should have been anticipated by the appellants.

We are satisfied from the foregoing discussion that it cannot be said, as a matter of law, that appellants were not negligent under the facts and circumstances of this case. They are not, therefore, entitled to a reversal upon the ground that the evidence was insufficient to justify or sustain the verdict or judgment.

Appellants further argue, however, that notwithstanding the fact that it may be determined that they were negligent, the plaintiff Perry was himself cognizant of the condition of the ladder when he ascended it, or in the exercise of due care should have been cognizant of it, and being contributorily negligent, he is equally responsible for the accident and cannot hold appellants therefor. They point out that Perry, having himself nailed the ladder to the roof, and having put the collar around it to render it safe, unquestionably knew that it had been fastened at the top, and knew that it was necessary in order to be safe for use that the ladder should be fastened at the top. Therefore, they claim that he was charged with knowledge of the fact that the lowering of the roof would unloosen the ladder at the top, and that when he used the ladder without first ascertaining definitely that it was in fact fastened he was guilty of contributory negligence, which barred his recovery. This argument would undoubtedly be persuasive were it not for the fact that Perry was expressly assured by Smith, foreman for the appellants, that the ladder "was all right, that it was all fixed". Under the circumstances that Perry had seen Smith take charge of the ladder, knocking it loose at the bottom, and had ascertained that it had been refastened at the bottom by Smith, Perry was entitled, as an ordinarily

careful man, to rely upon this assurance of safety on the part of Smith. He was entitled to believe that Smith, having unloosened the ladder from its former safe condition, had replaced it to the same condition. This assurance of safety by Smith changed the situation as far as Perry was concerned and relieved him of the charge of being contributorily negligent in failing to appreciate the danger arising from the unsafe condition of the ladder. We are satisfied that the verdict of the jury which impliedly found that respondent was not guilty of negligence, either primary or contributory, finds sufficient support in the evidence.

■ Appellants complain that the negligence which is pleaded by the plaintiff in his complaint is that defendants "negligently and carelessly unfastened and left unfastened said ladder at the top thereof, and thereby rendered said ladder dangerous and unsafe", and insist that the assurance of safety cannot, therefore, form a predicate for a charge of negligence against Smith. It is true, as claimed, that the assurance of safety by Smith is not specifically pleaded as the basis of the action by the plaintiff. But, it is to be noted, the assurance of safety is not relied upon by plaintiff as the foundation of his cause of action. The gist of the negligence upon which the action is predicated is the failure of the appellants, after they had assumed to make the ladder safe for use, to fasten the ladder at the top after it had become detached by the lowering of the roof. The effect of the assurance of safety was merely to relieve the plaintiff Perry from the claim of negligence in failing to ascertain for himself the condition of the ladder which, in the absence of an assurance which falsely lulled him into a sense of security, he, as an ordinarily prudent person, would have been under a duty to ascertain. It was not necessary, therefore, that this assurance of safety be pleaded and set forth as an element in a charge of negligence alleged therein.

As a verbal act which negatived appellants' charge of contributory negligence, the testimony setting forth this assurance of the safe condition of the ladder was clearly relevant and admissible. And we are satisfied that it was, under the circumstances, within the scope of Smith's employment as foreman of the Sullivan Company. As such foreman it was his duty to raise and lower the roof and to do so as expeditiously as possible. The trend of the directions of Smith to

Perry to go on up to look over the work indicated that Smith had undertaken to fix the ladder in order that the work performed by his crew of workmen could be inspected by Perry without any delay, and that his motive in urging Perry to go on up the ladder, saying, "You had better go up there, look it over, because I have to get out of here," was that Perry might give his approval of the work, and the workmen for Sullivan Company could remove their equipment and leave the job immediately.

Appellants attempt to minimize the effect of this assurance by claiming that Smith was only referring to the bottom of the ladder and was not referring to the top of the ladder at all. We cannot accede to this suggestion. We do not believe that when Smith stated to Perry, "Everything is all right; it is all fixed," he intended merely to assure Perry that the bottom of the ladder was all right, and that Perry was not entitled to accept this statement as an assurance that the top of the ladder was safe. Undoubtedly, Smith was referring to the whole situation, and Perry was fully justified in accepting it as such.

Appellants also complain of a variance between the pleading and the proof in that the complaint alleges that the ladder became unfastened while the defendants "were engaged in *raising* the roof of said building", whereas the proof showed that the ladder became unfastened while defendants were lowering the roof. It is true that appellants were in fact lowering the roof at the time the ladder became unfastened, but this lowering of the roof was done in the course of their general contract to raise the roof of the entire building to change it from a one-story to a two-story building, and the loosening of the ladder may, therefore, properly be said to have occurred while appellants were doing the job of raising the roof of the building.

Appellants, in addition to their principal contention above discussed, set forth various errors in the conduct of the trial. These errors would not justify a reversal of the judgment. They consist in the main of alleged errors committed in the giving or refusing to give certain instructions. We have examined with care these instructions, as well as the instructions as a whole, and find no error was committed. We are also convinced that the alleged prejudicial conduct of respondent's attorney did not have the effect claimed by

appellants and a reversal would not be warranted upon that ground. ■ And, in view of the uncontradicted evidence with reference to the very serious nature of respondent's injuries, considered in conjunction with the fact that at the time of the injury he was an able-bodied man, 45 years of age, making a daily wage of $10 per day, we cannot say that the verdict rendered was excessive.

We have not deemed it necessary to discuss, either generally or in detail, the authorities cited to us by the opposing parties. They each involve different facts and elements and none of them is exactly analogous. We think that an extended discussion would serve no good purpose, and would tend to confuse rather than clarify the issues herein involved.

The judgment is affirmed.

Langdon, J., Preston, J., Thompson, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.