[Civ. No. 5076. Third Appellate District,—December 22, 1934.]

KENT R. STANLEY, Respondent, v. FRANK R. LANDER, Appellant.

Hawkins & Hawkins and J. W. Hawkins for Appellant.

Bush & Cleary, David F. Bush and L. A. Cleary for Respondent.

PLUMMER, J.—Plaintiff in this action had judgment for the sum of $500 on account of an injury alleged to have been received by coming in contact with an electric wire in a building owned by the defendant. From this judgment the defendant appeals.

The record shows the appellant, at the time of the injury received by the plaintiff, was the owner of a certain store building in the city of Ceres, in Stanislaus County, and had been the owner of the premises for a number of years. In November, 1930, the appellant caused the building to be wired for electricity, that is, it was wired so that it might be electrically lighted. The wires installed in the building were intended to carry 110 volts. A permit was taken out for the wiring of the building, and after the wiring had been completed, it appears that it was approved by the building inspector of the town of Ceres. The store room in question had been used as a restaurant by successive tenants. Prior to the wiring and prior to the occupancy of the premises by the plaintiff in this action, a former tenant had obtained permission from the defendant to cut a hole in the ceiling, and also in the roof of the building, for the purpose of running a pipe from a canopy over a gas stove up to the ceiling to carry away heat and fumes. In pursuance of this permission a hole sufficient to accommodate a five-inch pipe was cut in the ceiling and a corresponding hole in the roof, which at this place appears to have been about three feet above the ceiling. A tin plate was inserted in the roof and a short pipe attached to the tin plate so as to permit the heat and fumes escaping into the outer air. The pipe from the canopy over the gas stove appears to have extended only to the ceiling, and between the ceiling and the opening in the roof, which we have said was a space of about three feet, no pipe appears to have been placed above the ceiling connecting with the opening in the roof by the one who obtained permission to cut the hole in the ceiling.

After the hole had been cut in the ceiling, as we have stated, and the vent pipe placed in the roof, the tenant who had performed this work vacated the premises. Subsequent to the vacating of the premises the defendant, assisted by an electrician named R. L. Gill, strung wires in the ceiling for the purpose of lighting the room by electricity. The live side of the wire strung along in the ceiling was placed a trifle above, and slightly to the side of the hole which we have described as having been cut in the ceiling. These wires were strung or placed in position by the defendant Lander. The record would indicate that the wires were run along through the joists or stringers to which the ceiling was attached. Apparently the wires were properly safeguarded where they were passed through the joists or stringers. When placed in position the wires were insulated.

We find nothing in the record as to the condition of the wires at the time of the injury suffered by the plaintiff as hereinafter mentioned. After the tenant named Lander cut the hole in the ceiling and in the roof as just mentioned, he vacated the premises, and for a short while a tenant by the name of Brown occupied the same. The premises in question consisted of a long, narrow room. No written lease was entered into between the plaintiff and the defendant; no particular conversation is shown to have taken place, according to the record, between the plaintiff and the defendant at the time the room was leased by the plaintiff, and all that appears in the record concerning the same is that the plaintiff was given a key to the premises and the defendant accompanied the plaintiff thereto and showed him the room. There is nothing in the record which would indicate that the room could be heated other than by the utilization of cither a coal or a wood stove. The plaintiff took possession of the premises some time in December, 1930, after the electric wiring had been completed as herein stated. The location of the wires does not appear to have been called to the attention of the plaintiff, and so far as he was concerned the record shows him to have been ignorant of their presence.

A short time after the occupation of the premises by the plaintiff, he installed a wood stove, and had a stovepipe leading from the stove up through the ceiling to the hole in the roof to which we have referred installed by two workmen. Later on in examining the condition of the pipe

so leading from the stove up through the ceiling to the hole in the roof, it appears that the plaintiff became convinced that the wiring holding the pipe was not securely fastened. In view of this it appears that the plaintiff took down the pipe for the purpose of reinstalling the same. In order to reinstall the stovepipe the plaintiff stood upon the stove and endeavored to replace the pipe by inserting it through the hole in the ceiling. In so doing, after he had inserted the pipe about three inches in the ceiling, it came in contact with something which obstructed his efforts to replace the pipe. Having no knowledge of its nature, the plaintiff, standing on the metal stove, reached up through the ceiling to remove the obstruction, came in contact with the electric wire, and received a shock sufficient to throw him from the stove. In falling the plaintiff received a broken arm and shoulder.

The court found that at the time of the installation of the electric wire by the defendant he knew of the dangerous character of electricity, and also the dangers of placing an electric wire in such close proximity to the hole. The record shows that the defendant had been in the room where the stove had been installed by the plaintiff, and had an opportunity to observe the stovepipe running up through the ceiling. The defendant denied that he observed the position of the pipe going through the ceiling. The defendant also denied that he knew of the existence of the hole in the ceiling. As against this denial the trial court had for its consideration the fact that the defendant had given permission for the cutting of the hole in the ceiling, and had actually drawn the wires along in the ceiling in such close proximity to the hole. The record shows that access to the ceiling is had by entering through a small door in the gable at the rear end of the building; that the entrance could be made only from the outside. Whether by stairway or by ladder this door in the gable could be reached does not appear in the record. It is shown, however, that there is no entrance to the ceiling from the room occupied by the appellant. The record is not exactly clear as to whether the position of the wire adjacent to the hole in the ceiling could be seen by one occupying the position the plaintiff occupied at the time he received the shock. The plaintiff's testimony is that he did not see the wire and did not know that there were any wires in close proximity to the hole

in the ceiling. As a matter of experience the trial court knew that the space above the ceiling would ordinarily be a darkened room. There is no testimony in the record showing that it was sufficiently lighted to readily disclose the presence of the wires.

Upon this appeal the defendant relies upon the general statement of the nonliability of a landlord as to the condition of leased premises, the rule concerning which is stated in 15 California Jurisprudence, page 704, as follows: "In the absence of fraud, concealment or covenant in the lease, a landlord is not liable to a tenant for injuries due to the defective condition or faulty construction of the demised premises." In support of his contention that the landlord is not liable, the appellant places his chief reliance upon two cases, to wit, *DeMotte* v. *Arkell*, 77 Cal. App. 610 [247 Pac. 254], and *Ayres* v. *Wright*, 103 Cal. App. 610 [284 Pac. 1077]. In those cases, and others involving the same principle, it is held that the landlord is not liable for defects in construction, which defects could be discovered by the exercise of reasonable diligence, and also, where the defects were unknown to the landlord, and as readily ascertained by the lessee as by the landlord.

While accepting the principles stated in the cases referred to by the appellant, as absolutely correct, we are of the opinion that the circumstances involved in the cases referred to render them distinguishable from the circumstances involved in the instant case, and therefore call for the application of a different principle, and that the rule stated in 15 California Jurisprudence, page 705, is applicable here. It is there stated: "While the principle of *caveat emptor* applies to the leasing of defective premises, a lessor is liable for defects in the premises, known to him and unknown to the lessee, because arising from some cause not extraneous, if he allows the lessee to occupy the premises in ignorance of the risk. But whenever the defect is inherent and unknown to the lessor, he is not accountable where he has done all that a reasonably prudent man would have done towards fitting the property for occupancy."

In volume 1 "Tiffany on Landlord and Tenant", page 562, the rule as to liability for concealed defects is thus stated: "The rule above stated that the lessor is under no obligation to the lessee as regards the condition of the premises at the time of the demise, is subject to an exception to

the effect that if there is some hidden defect in the premises, or danger thereon which is known to the lessor at the time of making the lease, but which is not apparent to the intending lessee, the lessor is bound to inform the latter thereof, and failing to do so, he is liable for injuries to the tenant arising therefrom." And as further stated on page 568 of the same volume: "The view that the lessor's liability, as for negligence, exists when he has reason to suspect the existence of the dangerous conditions as well as when he actually knows of them, is asserted or indicated in other cases, and accords with the rule, ordinarily applied, in determining questions of negligence, when this is dependent on knowledge of physical conditions, that one has knowledge of that which he ought to know." It is true that if the plaintiff in this action had obtained access to the ceiling through the door in the gable, or opening in the gable to the rear of the building, and entered the space between the ceiling and the roof and investigated the location of the electric wires, he would have discovered their close proximity to the hole already cut in the ceiling. However, we think that the rule requiring such an investigation as an ordinarily prudent man would make preceding the leasing of premises, does not go so far as to require here entry above the ceiling. A wire used for the purpose of conveying an electric current is a dangerous instrument. The law is clearly set forth that where electric companies erect wires for the purpose of conveying electricity, they must take into consideration the inherent dangers connected with such use of wires, and use all reasonable precautions to prevent human beings coming in contact therewith. We think the same rule applies when an owner engages in installing electric wires on his own premises.

Applied to the instant case the owner must be held not to have used reasonable precautions in installing electric wires in such a position that they were so close to the hole in the ceiling that anyone, in the reasonable use of the premises, would be liable to come in contact therewith. The testimony in the record shows very clearly that electric wires should not be placed so close to a heated stovepipe, as the heat from the pipe causes the insulation to degenerate. While the wires in the instant case were not concealed defects in the premises such as we find described in many of the cases, we are of the opinion that the presence of the

wires so close to the hole in the ceiling constituted a trap not readily observable by anyone making ordinary and usual use of the premises. The record discloses no means of heating the premises other than by the use of either a wood-burning or a coal-burning stove. There was just one hole in the ceiling, and just one hole in the roof immediately above the ceiling, so arranged as to induce in an ordinarily prudent person the thought that the arrangement in the ceiling and the roof was there for the purpose of accommodating a stovepipe. From which follows the conclusion that the landlord observing the same conditions must be reasonably held to have anticipated that such use would be made of the arrangement apparently provided for the use that was made thereof by the plaintiff.

What constitutes ordinary precautions or care in the installation of electric wires must correspond with the dangers attendant upon the installation of such a dangerous element. In other words, the degree of care is measured by the degree of the danger. Measured by this standard we conclude that the appellant did not use ordinary care in installing the electric wires. Whether he did or did not observe the hole in the ceiling and the appliance in the roof, he must be held to a knowledge of such conditions, because by his own testimony he individually placed the wires in the location which we have heretofore stated. It may be possible that the appellant did not realize that heat would cause the insulation to degenerate, but everyone must be held to a common knowledge that exposed electric wires not inclosed with a protective tube or casing are liable to have the insulation impaired, and this knowledge we hold requires everyone installing such electric wires to place them at a reasonable distance from a place where anyone is liable to come in contact with them. This was not done in the instant case.

The exceptional circumstances which we think take this case out of the ordinary rule relieving a landlord from liability consist in the dangerous character of electric wires; the fact that they were installed in a place where they would not be readily observable, and so close to a hole in the ceiling, where one desiring to heat the premises might reasonably be expected to insert a metal stovepipe.

The rule relieving a landlord from liability for defects in the building is not so elastic as to relieve a landlord where

his own act creates a dangerous condition not readily observable.

No complaint is made that the damages awarded are excessive, and therefore the extent of the plaintiff's injuries need not be considered.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 21, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 18, 1935.