Filed 4/26/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PINDA HALL et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> AURORA LOAN SERVICES LLC et al., <br><br> Defendants and Respondents. | A133045, A134180 <br><br> (Contra Costa County <br> Super. Ct. No. C10-00053) |

Appellant Pinda Hall is a real estate agent who was injured while showing prospective buyers a house for sale at 5 Greene Place, Lafayette. She and her husband sued the owner and the listing agents for negligence, premises liability, and loss of consortium. The trial court entered summary judgment in defendants' favor. We reverse. We conclude that there are triable issues whether defendants had actual or constructive knowledge of a concealed dangerous condition and satisfied their duty to notify Hall of it.

I.
FACTS AND
PROCEDURAL BACKGROUND

At the time Hall was injured, the house was owned by respondent Aurora Loan Services LLC (Aurora) after having been foreclosed upon. In early May 2009, Aurora listed the property for sale through respondents Rockcliff Realty, with Jon Wood and Holly Sibley as the listing agents (collectively, the "listing agents"). Between the time the property was listed and the date Hall was injured, the house was visited by scores of real estate agents and potential buyers, perhaps more than 100.

One of the features of the house was an attic that had been converted into a "bonus room" by a previous owner. This room was accessed by using a pull-down stairway

1

ladder, which was hinged and braced with metal brackets.  When raised, it folded, retracted, and recessed into the attic's opening.  Wood had used the stairway ladder once to climb into the attic room before he listed the house and had not observed anything wrong with it.  Although he could not remember if he pulled down or retracted the stairway ladder on that visit, he recalled operating it on subsequent visits without incident.

In late May 2009, the house was inspected by a licensed contractor, Christopher Trent, who prepared a report titled "Estimate for Repairs."  This report appears to have been prepared to show the estimated cost of repairing a number of basic aesthetic and safety shortcomings.  Trent sent copies of the report to Wood, Sibley, and a bank loan officer.

In the report, Trent listed more than 50 items needing repair under a heading entitled "Health and Safety Required Repairs-Group 1."  This list commingled cosmetic or minor items (e.g., "Minor Drywall patch and touchup paint," "Remove and Replace Carpet," "Install shower head") with health and safety items (e.g., "Mold Abatement and Air test," "Repair deck at edge-trip hazard," "Install smoke detector").  One of the listed items was "Stair-Remove and replace attic stair."  Other than the report, the listing agents received no information or complaints about a potential defect in the stairway ladder.

Hall showed the home to two of her clients on August 1, 2009.  She knew there was an attic bonus room before she arrived, and a copy of Trent's report was on the kitchen counter. When Hall and her clients came upon the stairway ladder, it was in the down position.  She visually inspected the ladder and thought it looked safe, but she was nonetheless reluctant to climb it.  She told her clients to be careful as they used the ladder.  Hall followed her clients up the ladder, but as she reached the point where she could look into the attic, a hinge broke, the ladder failed, and she fell.  The fall fractured her right leg and injured her knees.

Hall and her husband filed a complaint that included three causes of action: (1) general negligence; (2) premises liability; and (3) loss of consortium.  They named as defendants Aurora and the listing agents.  The listing agents moved for summary

2

judgment first.  They argued that the undisputed facts showed they had no notice or knowledge of a defect in the stairway ladder and were therefore entitled to judgment as a matter of law.  The trial court agreed and entered summary judgment in their favor.

Aurora then filed a separate motion for summary judgment on the same ground. Hall and her husband made a slightly different evidentiary showing in opposing Aurora's motion.  Nonetheless, the trial court granted Aurora's motion for the same reasons it granted the listing agents' motion.

Hall and her husband filed separate appeals from the two orders.  In a prior order, we deemed their appeal of the summary judgment granted in favor of Aurora timely even though it was filed before judgment was formally entered.  (See Cal. Rules of Court, rule 8.104(d)(2).)  We also consolidated the appeals.

## II.
## DISCUSSION

A.      *The Standard of Review.*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)  We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports."  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

A defendant meets his or her burden of showing a cause of action has no merit by showing one or more element of the cause of action cannot be established or that there is a complete defense to that cause of action.  (Code Civ. Proc., § 437c, subd. (p)(2).)  Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of one or more material fact exists as to that cause of action or defense.  (*Merrill v. Navegar, Inc.*, *supra*, 26 Cal.4th at pp. 476-477; see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854-855.)

3

B.      *The Duty of Aurora and the Listing Agents to Disclose to Visitors Known but Concealed Dangerous Conditions.*

We begin by discussing the duties of property owners and real estate agents to notify people viewing their marketed property of known but concealed dangerous conditions. These duties arise partly as a result of the legal responsibilities imposed on property owners and agents, and partly because of the legal relationship between them.

Under Civil Code section 1714, all people, including property owners, are required to use ordinary care to prevent injury to others. "[T]he basic policy of this state set forth by the Legislature in section 1714 . . . is that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 118-119.) As a consequence, property owners are required to "maintain land in their possession and control in a reasonably safe condition." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674, disapproved on another point in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527, fn. 5.)

To establish liability on a negligence theory against an owner for injuries caused by a dangerous condition of the property, a plaintiff must prove duty, breach, causation, and damages. (*Ortega v. KMart Corp.* (2001) 26 Cal.4th 1200, 1205.) The same concepts of duty applicable to general negligence claims apply to premises liability claims. (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 530.) The scope of an owner's duty to visitors regarding dangerous conditions of the property was explained by our Supreme Court. "Because the owner is not the insurer of the visitor's personal safety . . ., the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability. Although the owner's lack of knowledge is not a defense, '[t]o impose liability for injuries suffered by an invitee due to [a] defective condition of the premises, the owner or occupier "must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises . . . ." ' " (*Id.* at p. 1206, quoting *Hatfield v. Levy Brothers* (1941) 18 Cal.2d 798, 806.)

4

A property owner's legal relationship with an agent hired to help market a property is created and defined by the listing agreement. In addition to the contractual terms of the agreement, "an entirely different set of legal rules is brought into play. The law of agency is not a substitute for the law of contracts, but an additional and overlapping legal framework" that governs the relationship. (2 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 3:1, p. 3 (Miller); see also *R.J. Kuhl Corp. v. Sullivan* (1993) 13 Cal.App.4th 1589, 1599 [" '[t]he broker-principal relationship is governed by both agency and contract law.' . . . [Citation.]"])

Under the law of agency, real estate agents owe a duty of care to all persons, including third persons, within the area of foreseeable risk. (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 42-43.) "One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency . . . [¶] . . . [¶] . . . [w]hen his acts are wrongful in their nature." (Civ. Code, § 2343.) The extent of a real estate agent's duty to a third person is "determined by an examination of whether a reasonable person would have foreseen an unreasonable risk of harm to the third person and whether in view of such risk the [agent] exercised ordinary care under the circumstances." (Miller, Cal. Real Estate, *supra*, at § 3:45, p. 268.)

Information about a property known by an agent is imputed to the owner. "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." (Civ. Code, § 2332.) And, the negligence of an agent is the negligence of the principal. "[A] principal is responsible to third persons for the negligence of his agent in the transaction of business of the agency . . . ." (Civ. Code, § 2338.) In short, "[t]he acts of an agent are, in legal effect, the acts of the principal, and notice or knowledge of a fact to a principal or an agent is deemed as notice to the other party." (Miller, Cal Real Estate, *supra*, at § 3:2, p. 5.)

There are only a couple of decades-old reported cases that specifically address the duty of real estate agents to warn visitors of marketed property of known but concealed dangerous conditions. More than 50 years ago our Supreme Court discussed the duty in a

5

case arising out of an agent's showing a property to a prospective tenant in *Merrill v. Buck* (1962) 58 Cal.2d 552. "[W]e are satisfied that, having affirmatively undertaken to show the house to plaintiff in the regular course of their business with the purpose of earning a commission if [the prospective tenant] decided to rent it, these [real estate agents] were under a duty of care to warn [the prospective tenant] of a concealed danger in the premises of which they were aware and from which [the prospective tenant's] injury might be reasonably foreseen. . . . It was up to the jury to determine the extent of the hazard, the question of latency, and the character of the conduct of these defendants necessary to constitute the exercise of reasonable care under all of the circumstances. [Citations.]" (*Ibid*, at pp. 562-563.) Eleven years before *Merrill*, an appellate court held that real estate agents are bound to exercise reasonable care to discover dangerous conditions of property they are marketing and to warn visitors of them or to make them safe. (*Coughlin v. Harland L. Weaver, Inc.* (1951) 103 Cal.App.2d 602, 605-606.)

Based on *Merrill v. Buck, supra,* 58 Cal.2d. 552 and the principles discussed above, we conclude that a real estate agent has a duty to notify visitors of marketed property of concealed dangerous conditions of which the agent has actual or constructive knowledge. The agent's actual or constructive knowledge of a dangerous condition is imputed to his or her principal, the property owner, who shares with the agent liability for damages proximately caused by a breach of this duty.

C.    *Whether Aurora and the Listing Agents Had Actual or Constructive Knowledge that the Stairway Ladder Was a Concealed Danger.*

We now turn to the central issue in this appeal, which is whether evidence was presented upon which a jury could find that Aurora and the listing agents knew or should have known that the stairway ladder was unsafe. We note at the outset that Hall does not, and cannot, claim to have been unaware of the stairway ladder or the general risks associated with using one. It was obvious that access to the attic room was by means of the stairway ladder. Hall had reservations about using it, and she cautioned her clients when they climbed it. The question in this case, therefore, is not whether Aurora and the listing agents had reason to know that the stairway ladder was dangerous simply because

6

it was a ladder. Instead, the question is whether evidence was presented upon which a jury could conclude that Aurora and the listing agents had reason to know that the stairway ladder was potentially dangerous because it was in disrepair. We believe that such evidence was presented.

In his inspection report, Trent identified the stairway ladder and recommended that it be replaced as part of the items listed under the heading entitled "Health and Safety Required Repairs-Group 1." Although there was no evidence that Aurora received or had actual knowledge of the report, the report was delivered to the listing agents, and Wood admitted looking at it.

This report raises a question as to whether the listing agents knew or should have known that the stairway ladder might have been in disrepair. It is true, as Aurora and the listing agents point out, that the recommendation to remove and replace the stairway ladder was buried in a long list of suggestions for mostly ordinary or cosmetic repairs. But the recommendation to replace the stairway ladder suggests at least the possibility that it was worn or broken. For all the listing agents knew at the time, Trent recommended the stairway ladder be replaced because he believed it would soon collapse. Yet there is no indication in the record that the listing agents did anything to follow up with Trent about the reasons for his recommendation or to inquire further into the stairway ladder's safety.

Aurora and the listing agents correctly point out that Trent did not recall any safety concerns with the stairway ladder when he was deposed. At his deposition, he testified that he saw the stairway ladder when he inspected the property, and he climbed it to go into the attic room. It did not appear to him to be dangerous, and he explained that if there had been a problem with the stairway ladder other than appearance, he would have noted it in his report. He stated that although he had no specific recollection as to why he recommended that the stairway ladder be replaced, he had prior experience with similar ladders, and he did not like them. He remarked that they are "crummy" products that look "poor." In his words, "They're functional but they just look bad."

7

This testimony, however, does not negate the possibility that a jury could conclude that a reasonable person who received the report might have believed that the stairway ladder needed to be replaced because it was in disrepair.  To begin with, a fair review of Trent's deposition testimony reveals that he could not remember exactly why he listed the stairway ladder as a health and safety issue and that he did not rule out the possibility that it was included in the list partly for safety concerns.  Furthermore, as mentioned above, the recommendation to replace the stairway ladder was included in the report's section entitled "Health and Safety Required Repairs-Group 1," which at the very least suggests the possibility of a safety problem.  Aurora and the listing agents cannot claim, based on Trent's explanations given long after the accident, that they had no reason to believe that the stairway ladder might be dangerous at the time of the accident.

Drawing all reasonable inferences in favor of plaintiffs, as we must (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768), we conclude that summary judgment was improperly granted because evidence was presented that created a triable issue as to whether defendants knew or should have known that the stairway ladder in this case was a concealed danger. [1]  Our reversal is on strictly limited grounds, and our opinion should not be taken to reflect any view of the ultimate merits.

D.      *The Loss of Consortium Cause of Action.*

Finally, the loss of consortium claim brought by Hall's husband is reversed and remanded because such a claim "stands or falls with [the spouse's] claims."  (*Jablonski v. Royal Globe Ins. Co.* (1988) 204 Cal.App.3d 379, 388.)

III.
DISPOSITION

The judgment is reversed.  Plaintiffs shall recover their costs on appeal.

---

[1] In light of our remand, we need not decide whether defendants' conduct is presumed negligent under Evidence Code section 669 and whether the court erred in excluding evidence of the photograph captured from the YouTube video.  Because the remand is unqualified, these and other issues raised by the parties can be adjudicated in the further proceedings.

8

_____
Humes, J.

We concur:


_____
Reardon, Acting P.J.


_____
Rivera, J.


*Hall v. Rockcliff Realtors* (A133045)
*Hall v. Aurora Loan Services* (A134180)

9

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Honorable Judith S. Craddick |
| Counsel for Appellant: | Paoli & Geerhart, Thomas Alan Paoli |
| Counsel for Respondent Aurora Loan Services LLC: | Manning & Kass Ellrod Ramirez Trest, Scott David Long, Thomas Anthony Trapani |
| Counsel for Respondent Rockcliff Realtors | Gilbert Kelly Crowley & Jennett, Daniel Charles Taylor, Paul Andrew Bigley, Peter James Godfrey |